# UNITED STATES DISTRICT COURT
# DISTRICT OF MARYLAND

| | |
|---|---|
| MICHAEL MECO JOHNSON,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | Civil Action No. TDC-18-0943<br>Crim. Action No. TDC-16-0030 |

## MEMORANDUM OPINION

Petitioner Michael Meco Johnson has filed a Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 ("2255 Motion"). In his Motion, Johnson challenges his conviction in the underlying criminal action on the basis that his trial counsel was constitutionally deficient during plea negotiations and in failing to communicate with Johnson. Having reviewed the submitted materials, the Court finds that no hearing is necessary. *See* Rule 8(a), Rules Governing Section 2255 Proceedings for the United States District Courts; D. Md. Local R. 105.6. For the reasons set forth below, the Motion is DENIED.

## BACKGROUND

On February 1, 2016, a federal grand jury returned a one-count Indictment charging Johnson with Possession of Controlled Substances with Intent to Distribute, in violation of 21 U.S.C. § 841(a)(1). The Indictment issued after law enforcement executed search warrants on an apartment and two garages used by Johnson and found 15.2 grams of crack cocaine, 2.3 kilograms of powder cocaine, 94.6 grams of heroin, paraphernalia used to manufacture and distribute these substances, items of jewelry believed to be worth at least $129,660, and $98,200 in U.S. currency.

The Indictment also included a forfeiture allegation covering the seized jewelry and currency, as well as all other property "obtained directly or indirectly as a result of any such violation" or "used, or intended to be used, in any manner or part to commit and to facilitate the commission of any such violation charged." Indictment at 2, ECF No. 1.

After Johnson was arrested, he retained Jennifer Matthews as his attorney ("Counsel"). At his initial appearance on April 13, 2016, Johnson was temporarily detained. Counsel then filed a Petition for Bail Review, which the Court (Day, M.J.) granted on May 24, 2016. Johnson was then released to the custody of his mother and required to remain at her residence subject to location monitoring.

On July 18, 2016, Johnson signed a plea agreement in which he agreed to plead guilty to the single count of the Indictment. The plea agreement stated the elements of the offense and detailed that Johnson understood that he had waived his right to a jury trial. The plea agreement also provided that the parties agreed that the total offense level under the United States Sentencing Guidelines ("Guidelines"), after a three-level reduction for acceptance of responsibility, would be 25. In the plea agreement, Johnson waived his right to appeal his conviction and sentence, unless the sentence was higher than the applicable Guidelines range for offense level 25. Johnson also consented to the entry of a criminal forfeiture order for the currency and jewelry seized from his residence and allegedly related to the offense.

In signing the plea agreement, Johnson attested that he had "read this agreement" and "carefully reviewed every part of it with my attorney." Plea Agreement at 8, ECF No. 22. His attorney made a comparable attestation. Johnson further affirmed that he understood the plea agreement, voluntarily agreed to it, and was "completely satisfied with the representation of my attorney." *Id.* At Johnson's guilty plea hearing on July 18, 2016, he stated under oath that he had

2

discussed the charges, his case, and the plea agreement with his attorney, and that he understood them and wished to enter a guilty plea. Again, he stated that he was fully satisfied with his attorney.

On November 16, 2016, prior to his sentencing, Johnson requested that new counsel be appointed. On November 22, 2016, the Court (Connelly, M.J.) held an attorney inquiry hearing, during which it relieved Matthews as counsel and appointed the Federal Public Defender as new counsel for Johnson. At sentencing on April 5, 2017, the Court agreed with the parties that the total offense level was 25 and calculated the Guidelines range as 57-71 months but granted a downward variance and sentenced Johnson to 48 months of imprisonment. Johnson does not allege that the Federal Public Defender was deficient as counsel.

At the sentencing hearing, the Court learned that the jewelry, as well as two vehicles that Johnson claimed belonged to other individuals, had previously been forfeited and sold, even though the Court had not yet signed the proposed criminal forfeiture order relating to the currency and jewelry. The Court ordered the Government to file supplemental materials explaining the process and authority under which the jewelry was forfeited. Based upon the materials submitted by the Government, the Court found that the United States Drug Enforcement Administration had seized the jewelry and vehicles pursuant to a nonjudicial administrative forfeiture process. *See* 18 U.S.C. § 983 (2012); 19 U.S.C. §§ 1602-1619 (2012); 21 U.S.C. § 881 (2012) (applying Title 19 customs forfeiture process to Title 21 drug cases). Thus, while the indictment included a criminal forfeiture allegation relating to the cash and jewelry pursuant to 21 U.S.C. § 853 and 28 U.S.C. § 2461(c), the Government chose to utilize the administrative forfeiture process rather than the criminal forfeiture process to gain title to the jewelry and the vehicles. In light of this finding, the Court held that Johnson's challenge to the administrative forfeitures could not proceed in his

criminal case. Johnson has since filed a separate civil action challenging the administrative forfeiture. *See* Civil Action No. TDC-18-0951.

Nearly a year after Johnson's sentencing, on April 2, 2018, he filed the pending 2255 Motion. That same day, he also filed a self-styled "Pro-Se Emergency Motion Due to Ineffective Assistance of Counsel and Withdraw Guilty Plea Pursuant to 18 U.S.C. 2255," which the Court will construe as a memorandum in support of his 2255 Motion.

## DISCUSSION

In his 2255 Motion, Johnson collaterally attacks his conviction based on four alleged forms of ineffective assistance of counsel: (1) "Lack of communication during critical times," (2) "Failed to process any documents," (3) "Motions Plea Agreement improperly filed," and (4) "Unethical Representation." 2255 Motion at 4-5, ECF No. 72. The Government argues that Johnson's Motion should be denied because he does not identify any harm that is cognizable under § 2255 or request any specific relief available under that provision.

### I. Legal Standards

#### A. Section 2255 Motions

A prisoner in federal custody may move to vacate, set aside, or correct his sentence on the basis that: (1) "the sentence was imposed in violation of the Constitution or laws of the United States"; (2) the sentencing court lacked jurisdiction; (3) the sentence exceeded the maximum authorized by law; or (4) the sentence is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a) (2012). The prisoner bears the burden of proof and must establish the claim by a preponderance of the evidence. *See Miller v. United States*, 261 F.2d 546, 547 (4th Cir. 1958).

In § 2255 proceedings, "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt

hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255(b). A hearing is necessary where there are material disputed facts or where the court must make a credibility determination in order to resolve the motion. *See United States v. Witherspoon*, 231 F.3d 923, 926-27 (4th Cir. 2000). "If it plainly appears from the motion and any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion." Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts.

A court should give sworn statements made in a Rule 11 plea colloquy a "strong presumption of verity," and "allegations in a § 2255 motion that directly contradict the petitioner's sworn statements made during a properly conducted Rule 11 colloquy are always palpably incredible and patently false." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005) (internal citations omitted). Therefore, a court may, "without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements" made during a Rule 11 guilty plea colloquy in the absence of extraordinary circumstances. *Id.* at 221-22. Where, as set forth below, many of Johnson's allegations are contradicted by statements at the plea hearing, and the Court may resolve the 2255 Motion without resolving factual disputes or making credibility determinations, the Court declines to hold an evidentiary hearing. For the same reasons, the Court denies Johnson's request for production of additional documents, beyond those since provided by the Government with the filings on this Motion.

### B.  Ineffective Assistance of Counsel

The Sixth Amendment to the United States Constitution affords a criminal defendant the right to "Assistance of Counsel." U.S. Const. amend. VI. The United States Supreme Court has

5

stated that "assistance which is ineffective in preserving fairness [of a trial] does not meet the constitutional mandate." *Mickens v. Taylor*, 535 U.S. 162, 166 (2002). A petitioner alleging ineffective assistance of counsel in violation of the Sixth Amendment must meet the standard established by the United States Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). Under this standard, the petitioner must show both deficient performance and prejudice—that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," *id.* at 687, and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," *id.* at 694. The *Strickland* test applies when the petitioner alleges ineffective assistance in the context of a guilty plea. *Missouri v. Frye*, 566 U.S. 134, 140 (2012).

All of Johnson's claims for relief turn on his allegation that Counsel was constitutionally ineffective in her representation of Johnson prior to and in relation to his guilty plea. When evaluating an attorney's performance and decisions, the court "must be highly deferential" and avoid hindsight. *Strickland*, 466 U.S. at 689, 691. To perform in a constitutionally effective manner, counsel has "a duty to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Strickland*, 466 U.S. at 691. While *Strickland* requires counsel to "conduct a reasonable investigation into potential defenses," it does not oblige counsel to "uncover every scrap of evidence that could conceivably help their client." *Green v. French*, 143 F.3d 865, 892 (4th Cir. 1998) *overruled on other grounds by Williams v. Taylor*, 529 U.S. 362 (2000).

To meet the prejudice requirement when the petitioner has pleaded guilty, as Johnson has here, the petitioner "must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474

U.S. 52, 59 (1985). A petitioner's statement to this effect submitted with a § 2255 motion is not dispositive, since "such a statement suffers from obvious credibility problems and must be evaluated in light of the circumstances the defendant would have faced at the time of his decision." *Hooper v. Garraghty*, 845 F.2d 471, 475 (4th Cir. 1988). If the petitioner alleges that his counsel was ineffective in failing "to investigate or discover potentially exculpatory evidence, the determination whether the error 'prejudiced' the defendant by causing him to plead guilty rather than go to trial will depend on the likelihood that discovery of the evidence would have led counsel to change his recommendation as to the plea," which, in turn, "will depend in large part on a prediction whether," objectively, "the evidence likely would have changed the outcome of a trial." *Hill*, 474 U.S. at 59-60.

Even if an attorney performed deficiently in advising a client, the "defendant may be unable to show prejudice if at the Rule 11 proceeding the district court provides an admonishment that corrects the misadvice and the defendant expresses that he understands the admonishment." *United States v. Akinsade*, 686 F.3d 248, 253 (4th Cir. 2012); *see United States v. Swaby*, 855 F.3d 233, 240 (4th Cir. 2017). Statements by the district court that are "general and equivocal" do not correct the "affirmative misadvice" of counsel. *Akinsade*, 686 F.3d at 254.

## II. Communications by Counsel

Johnson's first claim of ineffective assistance of counsel is that Counsel failed to communicate with him during "critical times." 2255 Motion at 4. Johnson alleges that Counsel "[d]isappeared for long periods including one time of over 4 months" and that he sent Counsel "many emails, phone calls [and] text messages with no response." *Id.* The memorandum in support of Johnson's 2255 Motion and various attached documents suggest that the "critical times" referenced by Johnson primarily cover the period between his initial appearance on April 13, 2016, when Johnson was temporarily ordered detained, and July 17, 2016, the day before Johnson signed

7

the plea agreement. Johnson alleges that Counsel never visited him during his period of pre-trial detention from April 13, 2016 until May 24, 2016. Johnson also alleges that, after he was released, he contacted Counsel multiple times leading up to the day he signed the plea agreement, but that Counsel was "non-responsive, inconsistent and difficult" on these occasions. Mem. Supp. 2255 Mot. at 9, ECF No. 71.

Johnson has not offered sufficient information to establish that Counsel's alleged failure to communicate with him during this timeframe amounts to constitutionally deficient performance. He does not point to any specific concerns about pleading guilty that he sought to discuss with Counsel. Where "there is no established minimum number of meetings between counsel and client prior to trial necessary to prepare an attorney to provide effective assistance of counsel," and Johnson has failed to provide specific allegations as to why more meetings and communications with Counsel were necessary, Johnson has not shown that Counsel's performance was deficient in this regard. *Moody v. Polk*, 408 F.3d 141, 148 (4th Cir. 2005) (internal citation omitted).

Johnson also has not demonstrated that any failure by Counsel to communicate with him resulted in prejudice under *Strickland* and *Hill*. He has made no allegations that "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 59. The only specific evidence Johnson offers of how Counsel's alleged failure to communicate impacted him are text messages, primarily with his United States Probation Officer, from the months after Johnson made the decision to plead guilty and before he was sentenced. These text messages all relate to Johnson's desire for a modification of his conditions of release and his attempts to coordinate a request for modification between his Probation Officer and Counsel. Even if the text messages, collectively, could support a finding that Counsel failed to advocate effectively for more favorable conditions of release pending sentencing, such a deficiency would

not be actionable under § 2255 because it does not impact whether Johnson has a right to be released from his present incarceration. *See* 28 U.S.C. § 2255(a) (providing potential relief to "[a] prisoner in custody under sentence . . . claiming the right to be released"); *United States v. Bernard*, 351 F.3d 360, 361 (8th Cir. 2003) (stating that § 2255 "affords relief only to prisoners claiming a right to be released from custody). Nor would it establish prejudice to Johnson by altering his decision to plead guilty. *See Hill*, 474 U.S. at 59. All of Johnson's other allegations of Counsel's failure to communicate are vague and conclusory and thus "may be disposed of without further investigation by the District Court." *United States v. Dyess*, 730 F.3d 354, 359 (4th Cir. 2013). Without any evidence or explanation for why Johnson might have changed his plea and insisted on going to trial if Counsel had returned his phone calls and visited him more frequently, the Court finds no prejudice arising from Counsel's alleged deficient performance.

Notably, Johnson does not allege that Counsel did not adequately explain the nature of the charges, the plea agreement, and the consequences of a guilty plea to him before he signed the plea agreement and pleaded guilty. Even if his § 2255 Motion could be construed to have alleged such deficiencies, such claims are squarely undermined by Johnson's sworn testimony during the plea colloquy, when he told the Court that he had discussed his case and the charges with his counsel and understood the charges against him, that he had reviewed the plea agreement with his counsel and understood its terms, and that he was fully satisfied with his counsel's representation and advice. Where Johnson has asserted no "extraordinary circumstances" that call into question the Court's ability to rely on his statements during the plea colloquy, the Court must take those statements as true. *Lemaster*, 403 F.3d at 221-22. And even if the Court had reason to believe that Counsel failed to communicate adequately with Johnson on these issues, the Court specifically informed Johnson during the plea colloquy of the nature of the charge, including its elements; his

right to a jury and other associated rights that he would waive by pleading guilty; and the possible punishment and the consequences of a guilty plea. Where Johnson stated that he understood this information, there was no prejudice. *See Swaby*, 855 F.3d at 240; *Akinsade*, 686 F.3d at 253. The claim of ineffective assistance of counsel based on lack of communication thus fails.

### III. Discovery and Documents

Johnson's second ground for relief is Counsel's alleged mishandling of the discovery process and failure to effectively use documents he provided to Counsel. First, Johnson asserts that Counsel failed to make any requests for discovery, but the Government has submitted discovery letters and documents establishing that a significant amount of discovery was provided to Counsel, pursuant to a standard discovery agreement, on April 28, 2016 and June 8, 2016. These materials included search warrant affidavits and returns, photographs taken during searches, lab reports establishing that seized substances were, in fact, controlled substances, and documents establishing Johnson's connection to the searched premises. Having reviewed the extensive materials produced, the Court finds that Counsel was not deficient in not seeking additional materials.

Second, Johnson asserts that Counsel did not review the discovery or discuss it with him prior to his guilty plea. Johnson, however, acknowledges in the exhibit attached to his 2255 Motion that on at least one occasion, in June 2016, Counsel met with him to go over the discovery she had received from the Government, including that they "reviewed some of the discovery and [Counsel] provided me some insight on how the CI set me up with audio wire tapes." 2255 Mot. Ex. 1 at 15, ECF No. 72-1. Although Johnson also asserts that Counsel failed to provide him with copies of the discovery, there is no requirement to do so, and, in this instance, Counsel was required by the terms of the discovery agreement, presumably for security reasons, not to provide copies of the discovery to Johnson. *See Escamilla v. United States*, No. GLR-11-CR-0303, 2017 WL

1382303, at *3 (D. Md. April 18, 2017) (declining to find deficient performance under *Strickland* where the petitioner claimed that counsel never gave him a personal copy of discovery). Notably, Johnson provides no claim, or reason to believe, that having his own copies of the discovery materials, as opposed to reviewing them with counsel, caused prejudice in that it would have caused him to insist on going to trial.

More broadly, though Johnson asserts that Counsel did not review all discovery with him, he does not specify how the lack of a more lengthy or robust review of discovery with Counsel caused prejudice, in that it would have motivated him to go to trial instead of entering a guilty plea. The Court has reviewed the discovery materials and identifies no exculpatory evidence or gap in the evidence on a particular issue that would have been likely to cause Johnson to refrain from pleading guilty. In *United States v. Bowman*, 348 F.3d 408 (4th Cir. 2003), in the context of a pre-sentencing motion to withdraw a guilty plea, the Court rejected the argument that withdrawal of a guilty plea was warranted because the defendant, charged with causing the victim's death by supplying drugs, never saw a toxicology report showing that the victim had no heroin or fentanyl in his system, a decision the Court reached in part because the defendant was generally made aware of that discovery and discussed it with his attorney. *Id.* at 414. Here, there is no comparable key evidence or lack of evidence that Johnson or his Counsel missed that would have caused him to go to trial rather than plead guilty. Accordingly, the Court finds no prejudice from the handling of discovery that would warrant a finding of ineffective assistance of counsel.

Finally, Johnson claims that Counsel failed to use certain documents he provided to her effectively. Johnson's submissions, however, suggest that the specific documents at issue were related to the administrative forfeiture process, such as the titles to two cars belonging to other individuals that were seized, forfeited, and sold, and documents showing his financial status,

11

presumably to show that he could afford some of the seized items. However, where § 2255 is available only for a "prisoner in custody" who is "claiming the right to be released," 28 U.S.C. § 2255(a), a § 2255 motion may be used only to assert "a right to be released from custody, not to challenge fines, restitution orders, or forfeiture orders. *Bernard*, 351 F.3d at 361; *United States v. Fabian*, 798 F. Supp. 2d 647, 685 (D. Md. 2011) (holding that § 2255 cannot be used to challenge a forfeiture order); *see also Hudgins*, 201 F. App'x at 143 (holding that a § 2255 motion "may not be used for the sole purpose of challenging fines or restitution orders"). Moreover, unlike in *Fabian*, the forfeiture in Johnson's case was an administrative proceeding conducted separate and apart from the criminal case, such that § 2255 is not available to challenge counsel's effectiveness in the forfeiture process. Johnson should reserve his arguments regarding the administrative forfeiture for his separate pending civil action. To the extent that Johnson arguably is asserting that any deficient performance relating to the forfeiture process may have impacted his decision to plead guilty, he has not offered sufficient allegations or evidence to show such prejudice. *See infra* part IV.

## IV. Motions and Plea Agreement

Johnson also asserts that Counsel was constitutionally ineffective because she failed file any motions and "put changes in the plea agreement agreed upon verbally between Mr. Johnson and the government." 2255 Motion at 4. First, Johnson's claim that Counsel filed no motions is factually inaccurate. On May 6, 2016, Counsel filed a Petition for Bail Review, which was granted and resulted in Johnson's pretrial release. Counsel also made an oral motion to modify Johnson's conditions of release. Second, the motions that Johnson argues should have been filed are a motion to modify his conditions of release and a "forfeiture petition," neither of which constitute grounds for a § 2255 claim for ineffective assistance of counsel, as discussed above. *See supra* part III.

Although Counsel did not file a motion to suppress the evidence seized during searches of Johnson's residence and other premises, the Court concludes, upon review of the submitted search warrant affidavits, that the decision not to file such a motion was a reasonable strategic decision. *See Strickland*, 466 U.S. at 691 (requiring deference to attorney's decisions); *see also Powell v. Kelly*, 562 F.3d 656, 670 (4th Cir. 2009) (holding that once counsel conducts a reasonable investigation of law and facts in a particular case, counsel's strategic decisions are virtually unchallengeable).

Next, Johnson argues that Counsel failed to "put changes in the plea agreement agreed upon verbally between Mr. Johnson and the government," apparently referring to changes that would prevent the forfeiture of the vehicles and certain jewelry. 2255 Mot. at 5. Even if this claim were true, however, any claim that Johnson pleaded guilty based on the mistaken belief that such terms were actually in the plea agreement is contradicted by Johnson's statements in the plea colloquy. First, Johnson stated that he had read the plea agreement, discussed it with his attorney before signing it, and understood its terms. Second, the Government specifically identified the fact that paragraph 12 required him to forfeit the listed property, which included the cash and jewelry seized from him, and Johnson acknowledged that he understood that provision of the plea agreement. Finally, the Court asked Johnson whether he understood that the plea agreement set forth the full agreement between him and the Government and that there were no other promises or agreements between the parties. Again, Johnson told the Court that he understood. Thus, Johnson understood that the plea agreement required the forfeiture of all jewelry, and he could not reasonably have believed that it included provisions requiring the Government to return the vehicles and certain personal jewelry when none appeared in what he acknowledged was the only agreement with the Government. *See Lemaster*, 403 F.3d at 221–22.

Even if there were such oral understandings and Counsel failed to arrange to have them memorialized in the plea agreement, Johnson has not established prejudice. He has not claimed, or provided a reasonable basis to conclude, that in the absence of his requested modifications, he would have gone to trial rather than plead guilty. Where the core of the evidence against Johnson was the drugs and paraphernalia seized from locations to which he was specifically linked, and the Court's review of the search warrant affidavits reveals no apparent basis to undermine the search, the record does not support a claim that his decision whether to go to trial would have been different. *See Fields v. Attorney Gen. of State of Md.*, 956 F.2d 1290, 1297 (4th Cir. 1992) (stating that where a defendant cannot show prejudice, the court need not resolve the issue of deficient performance).

## V. Unethical Representation

Johnson's final claim is that Counsel's representation was unethical. He generally states that Counsel "[i]gnored her duty to file things in a timely manner," "gave misadvice," lacked knowledge about "the federal guidelines," and lacked "professional integrity." 2255 Mot. at 5. The only specific facts that Johnson provides that could be construed as supporting these statements, other than those that have already been addressed in relation to Johnson's other arguments, are that Counsel allegedly was not registered with the United States District Court for the District of Maryland, was late for three initial hearings regarding conditions of release, and did not perform well. Johnson's claim that Counsel was not a member of this Court's bar is inaccurate. Counsel was an active member in good standing of this Court's bar when she represented Johnson. In any event, under this Court's Local Rules at the time, a retained criminal defense attorney was not required to be a member of this Court's bar. *See* D. Md. Local R. 201.1 (2016). Johnson also has not identified any specific late filings, and even if they exist, there is no evidence that the Court

did not fully consider such filings. Even if Counsel arrived late to any of Johnson's hearings, there is no indication that the Court started proceedings without defense counsel or that any tardiness influenced any decision. Most importantly, Johnson has not presented any argument why, absent Counsel's alleged ineffectiveness at the early hearings relating to conditions of release, he might have changed his decision to plead guilty and insisted on going to trial. *See Hill*, 474 U.S. at 59.

Beyond these issues, Johnson's claims of "unethical representation" constitute "vague and conclusory allegations" that "may be disposed of without further investigation by the District Court." *Dyess*, 730 F.3d at 359. In *Dyess*, the petitioner's motion included 25 claims "which consisted of a single sentence with no further explanation or factual development." *Dyess*, 730 F.3d at 359. The court affirmed the district court's dismissal of those claims because the allegations were vague and conclusory. *Dyess*, 730 F.3d at 360. Absent sufficiently specific factual allegations or evidence to allow for a more specific review, the Court will dismiss this final asserted basis for ineffective assistance of counsel.

In the end, it is evident that Johnson's primary objection to Counsel's performance is the failure to take steps to secure the return of personal jewelry of sentimental value, and of vehicles allegedly owned by innocent third parties, not whether it prevented him from knowingly and voluntarily pleading guilty to the charged offense. The Court understands Johnson's frustration with the forfeiture of these items, including with the Government's use of administrative forfeiture to dispose of the property without Court approval and any acts or omissions by Counsel that may have contributed the loss of these items. However, on the issue underlying a § 2255 motion, whether Johnson has shown that ineffective assistance of counsel provides a basis to vacate his conviction and sentence, Johnson has not established a basis for relief. The Motion will therefore be denied.

## VI. Certificate of Appealability

Johnson has no absolute entitlement to appeal a district court's denial of the 2255 Motion. *See* 28 U.S.C. § 2253(c)(1)(B). To appeal this Court's denial of the Motion, Johnson must obtain a certificate of appealability ("COA"). *Id.* A COA may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). When a district court dismisses a Motion to Vacate solely on procedural grounds, a prisoner must demonstrate both "(1) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right' and (2) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling'" in order to be entitled to a COA. *Rose v. Lee*, 252 F.3d 676, 684 (4th Cir. 2001) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When a district court reaches the merits, a petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because Johnson has made no such showing, this Court will not issue a COA. Although this Court declines to issue a COA, Johnson may still seek a COA from the Fourth Circuit. *See* Fed. R. App. P. 22(b)(1) (stating that if a district judge denies a COA, a petitioner "may request a circuit judge to issue it").

## CONCLUSION

For the foregoing reasons, Johnson's Motion to Vacate, Set Aside, or Correct Sentence pursuant to 28 U.S.C. § 2255 is DENIED. The Court declines to issue a certificate of appealability. A separate Order shall issue.

Date: January 18, 2019

THEODORE D. CHUANG
United States District Judge